DANIEL A. GLEASON *vs.* INHABITANTS OF WEST BOYLSTON.

Suffolk.   Jan. 8. — Feb. 28, 1884.   DEVENS & HOLMES, JJ., absent.

The St. of 1862, c. 223, §§ 10, 11, providing for the expenses of the support of lunatics in state lunatic hospitals, does not apply to the case of a sane person acquitted of homicide by reason of insanity and committed to such a hospital, under the St. of 1873, c. 227.

MORTON, C. J.   This action is brought, by the treasurer of the Commonwealth, under the St. of 1862, c. 223, §§ 10, 11, to recover the expenses paid by the Commonwealth for the support of one Spakeman in the Taunton Lunatic Hospital. Spakeman was indicted for murder, and upon his trial was acquitted by reason of insanity. Thereupon, on October 18, 1877, he was, by order of the court, committed to the Taunton Lunatic Hospital for his life, according to the provisions of the St. of 1873, c. 227. At the time of his commitment he was not, and he has not at any time since been, an insane person or a lunatic. His settlement was not then known, but it has since been ascertained that it was then, and has since continued to be, in the defendant town. The question whether the St. of 1862 applies to a case like this, is not free from difficulty; but, upon the whole, we are of opinion that it does not. This statute was intended as a general revision of the laws in reference to lunatic hospitals. In the provisions as to the expenses, the scheme of the statute is

that the cost of support shall be paid by the lunatic, if he is able, and the cost of lunatic paupers shall be paid by the State or by the towns of their settlement. Sections 10 and 11, by their terms, embrace the case of every lunatic who is committed by any legal authority. *Smith* v. *Lee*, 12 Allen, 510. But the statute did not contemplate that any one not a lunatic would be committed to a hospital. The St. of 1873 provides that, " when a person indicted for murder or manslaughter is acquitted by the jury by reason of insanity, the court shall order such person to be committed to one of the state lunatic hospitals during his natural life." Section 2 provides that a person thus committed may be discharged by the Governor and Council, whenever it appears that he may be discharged without danger to others. This statute does not require, or permit, the court to inquire whether the defendant is insane at the time of the commitment to the hospital. The verdict of not guilty by reason of insanity imports in law a finding that the defendant committed the homicide, but was insane at the time he committed it ; and the duty of the court thereupon is to order his commitment without inquiry as to his present mental condition. There are different provisions in cases of acquittal, by reason of insanity, of offences other than homicide. In such cases, the court cannot commit a person thus acquitted to a lunatic hospital, unless it is satisfied that he is insane at the time of the commitment. St. 1862, c. 223, § 17. Pub. Sts. c. 214, §§ 19, 20.

The practical effect of the St. of 1873 is to provide that, in case of an indictment for homicide, the insanity of the defendant is not a defence which entitles him to an unconditional acquittal, but that he shall be detained in confinement until it appears to the Governor and Council that he may be discharged and set at large without danger to others. He is not committed to the hospital for the purposes of treatment as a lunatic. He is not held there as other inmates are held ; he cannot be discharged, as others can be, by the trustees, or by a court upon proof that he is not insane, or, if insane, can be sufficiently provided for by himself or his friends, or the town of his settlement. Pub. Sts. c. 87, § 40. He is confined in the hospital as a place of detention, because his being at large would be dangerous to the peace and safety of the community. It has never been the policy of

this State to cast upon towns or cities the expense of maintaining persons imprisoned for crimes. If the Legislature had intended to cast this burden upon towns and cities in the cases of persons imprisoned under its provisions, we think it would have so provided in unequivocal terms.

The Legislature of 1862, knowing that none but insane persons could be committed to the hospitals, in making provisions for the support of the inmates naturally used language which includes only lunatic inmates.

The Legislature of 1873 passed a law by which sane persons might be committed to such hospitals, and made no provision as to their support. What its intention was as to the support of such persons is a matter of vague and uncertain inference; it does not so clearly appear that we can declare it was to impose upon the towns and cities the great burden of supporting sane persons committed for their natural lives as a penalty for a violation of the laws.

We are therefore of opinion that, under the St. of 1862, the defendant town is not liable for the support of Spakeman in the Lunatic Hospital; and it is not necessary to discuss the other questions argued by counsel.        *Judgment for the defendant.*

*J. W. Hammond,* for the plaintiff.

*H. F. Harris,* for the defendant.