ROBERT J. GOLDEN, petitioner.

Hampden.     September 28, 1960. — January 19, 1961.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, & CUTTER, JJ.

*Mentally Ill Person. Homicide. Practice, Criminal,* Acquittal by reason of insanity. *Constitutional Law,* Due process of law. *Probate Court,* Jurisdiction.

G. L. c. 123, § 101, is not the only method of securing discharge from a State hospital available to one committed thereto upon being acquitted of murder or manslaughter by reason of insanity, and is not unconstitutional as depriving him of a judicial remedy for his discharge. [674]

One committed to a State hospital under G. L. c. 123, § 101, upon being acquitted of murder or manslaughter by reason of insanity is not a "person adjudicated by . . . [a] court to be a mentally ill person" within § 94A, as appearing in St. 1959, c. 293, and cannot secure his discharge from the hospital by means of the procedure provided in § 94A. [674–675]

PETITION filed in the Probate Court for the county of Hampden on February 29, 1960.

The case was heard by *Smith*, J.

*James J. Landers*, (*J. Arthur Hickerson* with him,) for the petitioner.

*James W. Bailey*, Assistant Attorney General, for the Commonwealth.

WILKINS, C.J. This is a petition by Robert J. Golden in the Probate Court for the county of Hampden for adjudication of recovery of competence. G. L. c. 123, § 94A, inserted by St. 1947, c. 681, as amended by St. 1959, c. 293. The petitioner was found not guilty of murder by reason of insanity in the Superior Court for the county of Hampden on September 5, 1953. Pursuant to G. L. (Ter. Ed.) c. 123, § 101, he was ordered committed to the Worcester State Hospital during the term of his natural life.

The Attorney General filed a motion to dismiss the petition on the grounds that (1) the Probate Court does not have jurisdiction to entertain the petition, and (2) the petitioner's rights are governed by G. L. (Ter. Ed.) c. 123, § 101. The judge took the motion under advisement and heard the petition on the merits. Three competent psychiatrists testified in substance that the petitioner was sane and had been sane during the past seven years. No evidence was offered to the contrary, and the judge found that the petitioner is sane and entitled to be discharged if the Probate Court has jurisdiction. The case is here on report. G. L. (Ter. Ed.) c. 215, § 13.

The petitioner contends (1) that G. L. (Ter. Ed.) c. 123, § 101, is unconstitutional, and (2) that G. L. c. 123, § 94A, provides an alternative method for obtaining the release of one who has been found not guilty of murder by reason of insanity.

General Laws (Ter. Ed.) c. 123, § 101, reads: "If a person indicted for murder or manslaughter is acquitted by the jury by reason of insanity, the court shall order him to be committed to a state hospital or to the Bridgewater state hospital during his natural life. The governor, with the advice and consent of the council, may discharge such a person therefrom when he is satisfied after an investigation by the department that such discharge will not cause danger to others."

As we construe § 101, it is not unconstitutional. Objection is founded upon the undoubted premise that one acquitted by reason of insanity has been found guilty of no crime. *Commonwealth* v. *Rogers,* 7 Met. 500, 501. *Commonwealth* v. *McCann,* 325 Mass. 510, 515. See *Commonwealth* v. *Curtis,* 318 Mass. 584. Contention is then made that this section in murder and manslaughter cases deprives a person, who has been so acquitted, of a judicial remedy for his discharge. This conclusion we are unwilling to reach unless it is completely unavoidable, and we think that it is not. We are referred to *Gleason* v. *West Boylston,* 136 Mass. 489, decided in 1884, which held that a town was not liable to the Commonwealth for the support of a person committed to a "lunatic hospital" pursuant to St. 1873, c. 227, a predecessor of § 101. In the course of the opinion there can be found language, giving a very literal reading to the statute, which not only does not find favor with us today, but is somewhat inconsistent with the opinion of Chief Justice Shaw in *Commonwealth* v. *Rogers, supra.*

We are unwilling to hold that release by the Governor and Council is the only method available to the petitioner. We are of opinion that he stands committed subject, if proved sane, to discharge by any other appropriate legal procedure. We are of the further opinion, however, that § 94A, as amended,[1] is not such a procedure. We do not

[1] St. 1959, c. 293: "Any person adjudicated by any court to be a mentally ill person, whether or not in custody, may petition for adjudication of his or her recovery and competence. The petition for such adjudication may be made by such person or by any parent, guardian, conservator, relative or friend of such person, and shall be filed in the probate court for the county in which the person resides, is confined, or in which the adjudication of mental illness was made. . . ."

regard a person who has been indicted for murder or manslaughter, and who is acquitted by a jury by reason of insanity, as being a "person adjudicated by any court to be a mentally ill person." The jury decided only that the person lacked criminal responsibility on the date of the killing. Section 94A relates to an adjudication of mental illness as of the time of its making. See, for example, G. L. c. 123, § 50 et seq.

We are not faced with a present determination whether a petition under G. L. c. 123, § 91, as amended through St. 1950, c. 684, § 9,[2] is the proper remedy. See *Gentile, petitioner,* 339 Mass. 319. If it is not, and no other remedy is found, habeas corpus will lie. G. L. (Ter. Ed.) c. 248, § 1. See *O'Leary, petitioner,* 325 Mass. 179, 184.

*Petition dismissed.*

---

[2] "Any person may make written application to a justice of the supreme judicial court at any time and in any county, stating that he believes or has reason to believe that a person named in such application is confined as an insane person in an institution . . . and ought not longer to be so confined . . . and requesting his discharge. . . ."